that you need to be aware of your timing. When you get the yellow, you only have a little more time. When you get the red, you should stop. Unless we're still asking questions, we can keep you up there, but you can't keep yourself up there. So that's the situation. All right, on that note, we'll go ahead and get started. We have the first case is case number 23-11097. I won't read all the plaintiff appellants, but we'll say Utah v. Su, and we'll begin with Jonathan Berry. Good morning, and may it please the Court. Jonathan Berry presenting argument on behalf of all of those plaintiffs challenging the DOL's 2022 ESG rule. Your Honors, there's no way to hide the ball. The 22 rule was issued to make it easier for fiduciaries to funnel American workers' retirement savings toward the ESG funds that many of those money managers prefer. It was initiated under a climate change executive order that President Biden issued on day one, and it is built around a principle DOL developed for fiduciaries who wanted to invest on non-pecuniary grounds. The tiebreaker does not come from fiduciaries who came to DOL and said, I've prudently narrowed down investment options, but they're a financial tie. What do I do? No, what they said is, we want to invest for reasons other than risk in return. When do we get to do that? It was exactly that risk of fiduciaries straying from their duties that previously spurred DOL in 2020 to put a host of guardrails on the practice of fiduciaries considering ESG factors, to make sure that they did so only for pecuniary reasons and so that deviations from duty could be more easily monitored. That's the same risk that DOL has now inflamed by removing those guardrails. Okay, but there are states that feel the other way and filed an amicus spree. What is your response to that? So I think we have to look, Your Honor, at the text of ERISA and as well as the procedure requirements of the APA. As for the text of the ERISA, which is really the central legal question, we ask, does ERISA's duty of loyalty mean only that fiduciaries may not subordinate beneficiaries' interests to collateral goals, or does it require fiduciaries to consider beneficiaries' interests exclusively? Well, so the text says purpose. It says exclusive purpose. It says solely. The structure lists exceptions to the duty of loyalty, but not this exception for tiebreakers, and the Supreme Court has drawn on the common law of trusts to hold that a pension trustee cannot owe even a subordinate loyalty to someone other than the beneficiary of the trust and that beneficiary's interests. So that's — I think that goes — It seems like you all are assuming that the beneficiaries are never going to like what is picked on the tiebreaker, and I guess I don't really understand that, because there can certainly be a company that hates X, and X would be what was randomly picked if they randomly picked the ties versus the one that they would have gone, oh, wow, that's fantastic. Why is that not relevant if it's a true tie? I understand there's an argument about whether it's really a tie, but if it is. If it's a — so it would be one thing, Your Honor, if the tiebreaker said essentially in the case of a tie the fiduciary is to look at the beneficiary's interests more generically and then choose along those lines, but as written, it actually allows the fiduciary to essentially substitute its own policy preferences. But if you're a fiduciary, you can't do that. I mean, if you're a fiduciary, you have to do the best for your people. And the concept behind the tiebreaker is that the duty of loyalty is essentially exhaustible, that once prudence has narrowed the options down to things that are, as we would argue, economically indistinguishable, the fiduciary has broader reign to invest in a variety of collateral — invest for collateral reasons relating to climate change or diversity or whatever else may go under the heading of ESG or anything else. That concept — so it's possible we're in agreement, Your Honor, that the duty of — if we treat the duty of loyalty as exclusive and as not containing any recognition of a subordinate loyalty, then, of course, in that scenario, the fiduciary always has to act in accord with the beneficiary's interests, which are pecuniary, as Dudenhofer instructs us. The problem is DOL's anti-subordination rationale expressly allows for the recognition of some kind of secondary loyalty. They say that — the whole point of the anti-subordination principle, that construction of ERISA, is that DOL — is that fiduciaries are permitted to have other interests in mind so long as the beneficiary's interests come first. This is — trust law doesn't allow that. This is — the common law of trusts, as detailed in our briefing, doesn't stand for that. The Supreme Court reading ERISA and Taft-Hartley together, in light of that common law, expressly reads out any kind of secondary loyalty. And this Court's case law in the Fulton Bank v. Tate talks about ruling out even where there may be — not there is, but there may be — some kind of conflict of interest. So that's — that would be the concern. I think against our exclusivity construction of ERISA, DOL honestly doesn't put on very much of an affirmative case. There's no — in their briefing, there's no real discussion of text. There's no real discussion of structure. There is an attempt to distinguish the A. Max Cole case, that Taft-Hartley ERISA case, that I mentioned, and even the reference, as best we understand it, their reference to past practice is limited to discussing the applicability of the Major Questions Doctrine. They don't — they say it does not — it does not independently justify their tiebreaker reading. It's only relevant for that kind of follow-on question of the MQD, of the Major Questions Doctrine. So what effect, in your mind, has the Chevron change — the Chevron departure, I guess we'll say — had on this case? So ultimately, Your Honor, the Department on Appeal chose to defend this rule without reference to Chevron. They essentially disclaimed it, seeing the writing on the wall for what the Supreme Court may be up to. Instead, at this point, the only thing that's potentially relevant is the Supreme Court's re-articulation of essentially Skidmore deference, that courts are supposed — are, of course, supposed to give respectful consideration to an executive branch interpretation. The problem here is that the executive branch interpretation appears in comprehensive guidance two decades after ERISA. It's 1994, is DOL's big interpretive bulletin, the 1994 I.B., in support of their — in support of their reading. And the reasoning itself is — that's all the follow-on applications of tiebreaker — that reading is essentially unreasoned. Like, DOL asserts an anti-subordination construction of the duty of loyalty. It says that we can't — collateral factors are fine for considering once you get to the point of a tie. But it does little or nothing to talk about the text of ERISA, as we've attempted to lay out here, or the structure, or the common law. None of those — none of those cues as to original public meaning of the text are present in any of DOL's interpretations. And so the case for any kind of Skidmore, if you want to call it deference or respect for executive interpretations, is at about its lowest. That's — honestly, Your Honors, that's about it in terms of their affirmative evidence for their — for their reading. Everything else cuts the other way, and even what they have doesn't do a whole lot. The other issues — please. So circling back to Judge Haynes' Chevron point, what are the — what are the drawbacks to vacating the district court judgment? District court plainly relied on Chevron. What's the drawback? Aside from extending kind of the lifespan of this litigation, what's the drawback — We've been here a while, yes. — right, to vacating and remanding for reconsideration in light of Loeb or Bright? So I guess a few things, Your Honor. You know, first of all, this case, as presented on appeal, DOL itself did not rely on the district court's rationale. So this case has been fully adversarially presented and ventilated without any reliance on Chevron. And so while I suppose it — I think I would — I think I would leave it with that. In the meantime, we have — the court, in fact — the district court passed on — or, excuse me, ruled on the other questions that were litigating here. There was discussion of the tiebreaker, and there was separate discussion of the arbitrary and capricious grounds for vacature as well. And so I'm not sure that — I don't — I don't see anything in the district court opinion — you know, I'll go back and argue there if I have to, but I don't see anything in there that would incline the district court to revisit much of its opinion in light of — in light of what it — you know, its reliance on Chevron, given that it also relied on these other pieces of the case. I would like to draw the court's attention to these two cross-cutting issues that fall under the arbitrary and capricious heading. One is the 2020 finding by the Labor Department that some fiduciaries were less than rigorous in their loyalty and prudence analysis, that they were potentially doing so for a variety of inappropriate reasons. That — that finding justified the 2020 rule's erection of all of these safeguards, of all of these guardrails, to make sure that if — if the tiebreaker, for example, was to be exercised, it was going to be in the absolute narrowest circumstances. The department in 22, in its rescissionary — or its update rule, its new rule, instead took down all of those guardrails without making the countervailing finding that, no, no, there was no — there was no material incidence of lack of rigor and loyalty and prudence that we need to be worried about, or, alternatively, they didn't say, yeah, that risk that DOL previously — that we had previously identified, that risk exists, but here's a countervailing reason, and we are going to affirmatively weigh it. That runs — that was a — that failure of weighing was arbitrary and capricious, much in the way that the court's recent opinion on energy efficiency standards did not, that we — that we cite the Louisiana v. DOE case. There was no conscious weighing. Second, the demolition of all of these guardrails, the removal of these guardrails, means that there would be greater monitoring costs incurred by planned sponsors, like the employers represented in this case, as well as beneficiaries who are also represented. In the challenger's view, can the ESG factors ever be considered as financially relevant? When they are — when justifiable, on pecuniary factors only. So a company's environmental compliance could be a pecuniary factor, questions of — like, yes, yeah, when they're — Only if there's a bottom line, kind of green eye shade, financial ripple effect. Yes, and that was — that was the 2020 rules understanding of the proper relevance of ESG factors under the — Nowadays, a lot of things affect people's money that maybe wasn't true back in the 50s or whatever. So how do you figure out which one's which? Well, so, Your Honor, that's exactly why the text of — like, ERISA, for all of its detail, it's not that prescriptive. It has — it states very generically this duty of prudence so that any fiduciary can survey the landscape and, in its best judgment, identify what's going to needle financially. Okay. Well, you've saved time for a bottle. Thank you. Thank you. All right. We'll now hear from Daniel Winnick, representing the DO — representing Julie, Sue, and the U.S. Department of Labor. Good morning, Your Honor. It may please the Court, Daniel Winnick for the Department of Labor. This case is framed by the plaintiffs on appeal as principally about whether the tiebreaker rule, some version of which the Department has had for more than three decades, is consistent with ERISA. And I want to make three points at the outset about what this dispute isn't about, because the actual scope of what it is about, I think, is quite narrow. First, everybody agrees fiduciaries cannot use collateral factors to choose an investment that isn't in the financial interests of the plan. The tiebreaker comes into play only once a fiduciary prudently concludes that two or more investments equally serve the plan's financial interests over the appropriate time horizon. Second, everybody agrees that even if there is a tie, fiduciaries have to invest in both or all of the tied assets instead of just one, unless it's imprudent to do so. The tiebreaker rule only applies when that is imprudent because transactional or monitoring costs outweigh the benefits of diversification. Third, I think everybody agrees that when a fiduciary faces a choice among two or more investments that equally serve the financial interests of the plan, and prudence dictates the choice of just one, the fiduciary has to resort to some sort of collateral consideration, which is to say something unrelated to risk or return, in order to make the choice between them. The plaintiffs say that should be a coin flip. And our point, and DOL's consistent point for more than three decades, is that there's just nothing in ERISA or the common law to make clear that fiduciaries have to make that choice on the basis of a coin flip as opposed to some sort of collateral consideration. But do you agree with your friends on the, while we're doing agreements, I appreciate you starting with the common ground, you agree with your friends on the other side that this rule would allow a coin flip? It certainly would allow a coin flip. It doesn't mandate the use of collateral benefits. Because I take it, I'm looking at the text of the rule, it says, moreover, when there is a need to break a tie, there's nothing in the regulation that requires fiduciaries to look to climate change or other ESG factors to break the tie. So they could presumably do it on the basis of a coin flip? For sure. They could do it on the basis that one investment advisor is a Houston Astros fan, which is obviously good, and not a Yankees fan, it's obviously bad. Right? Without comment on the baseball allegiance, yes, I think that's right. And presumably, there's nothing in ERISA that has some sort of like anti-discrimination provision, right? There may be other bases in federal law that would prevent pernicious discrimination between, say, I would like to support this investment and not this investment on the basis of some otherwise protected factor, but ERISA would be silent as to that basis of choosing between two. That's right. And of course, ERISA has general duties of prudence, so you'd have to make a decision in a reasoned way. But yes, I agree. And here's what I don't understand. Why would it be that you can use a tiebreaker at the end that you can't use at the beginning, right? Because you would agree, I assume, that you couldn't, an investment advisor, an ERISA plan administrator couldn't choose investments on the front end on the basis of Astros affiliation or coin flipping. I guess I'm not sure what on the front end means. I mean, like, I'm going to sit down, you and I are, we're working together, we're going to administer the plan, we're trying to pick out, you know, we work at State Street, and we're going to try to figure out how to come up with a good portfolio. And you say, Judge, I really think it would be best to, you know, I've read Random Walk down Wall Street, and I think it would be best just to do coin flips. And I say, I don't know, what about dartboards, right? But that's how you and I are going to administer our ERISA plan, dartboards and coin flips. That clearly violates the duty of loyalty, the duty of care, the duty of prudence, like everything. Yes. No, I mean, the premise of the tiebreaker standard, as articulated in this rule and for a long time, is you have to first prudently undertake the consideration of what best serves the financial interests of the plan. That is the lodestar. Only once you have prudently determined that there are two or more investment options that equally serve the plan's financial interests does this rule say, at that point, ERISA doesn't tell you how to choose among them, therefore. So I'm with you right up to that very last sentence. Because what I, it seems to me that the premise of that sentence, that is that once you get to the place of equal financial service to the plan, then the ERISA fiduciary obligations run out. I don't know that I'd say they run out. I think what I would say is that any of the choices a fiduciary makes in that context meet the fiduciary's obligations. And the point is you have to have some way of choosing between them, right? The setup of the tiebreaker— What if the fiduciary picked something they knew the beneficiaries would be very unhappy with? So this rule does not take a position on which collateral benefits a fiduciary could employ, right? The rule does not say, you know, you have to survey the plan participants and beneficiaries and only if they like, you know, one benefit over another. Well, I understand they're not going to necessarily go and ask everyone. But if you know this is a company that is anti-cigarettes, but you decide let's go ahead and, well, between these two, we'll go with the cigarette company, would that be appropriate for the fiduciary to do? So I'm not sure. I guess I'm not sure what the company is in the hypothetical. What I will say is just this rule does not take a position on which collateral benefits you can employ. It just says you can employ collateral— But it's a fiduciary, so you have to be a fiduciary. You can't pick something you know this company is opposed to, right? Well, so the fiduciary is acting not on behalf of a company, but on behalf of— Well, the company meaning the people in it. In other words, you wouldn't go work for a company that you can't stand or you can't agree with, right? So if you're a beneficiary of the company, then I'm just trying to understand why a fiduciary wouldn't be concerned to make sure that something that those beneficiaries would be opposed to. You may be right as a practical matter that fiduciaries are likely to pursue collateral benefits that they think are consistent with the views of plan participants. My only point is this rule does not say that ERISA's fiduciary duties impose a burden as to which collateral benefits you can pursue or not. I'm just saying as a fiduciary, you have to do the best for your people. You have to look out for the financial— It's a high, high, high standard. I wholeheartedly agree, and what that standard means, as the Supreme Court has said in Dudenhofer, is you have to pursue the financial interests of the plan and its participants and beneficiaries. And that has to be the lodestar. That is the sole and exclusive duty. Only once you have done that, and it does not allow you to make the ultimate choice between two investments, are you allowed under this rule. So the rule defines tie—correct me if I'm wrong—as serve the financial interest of the plan equally well. Is that right? Right, over the appropriate time frame. I guess my question is about what does equally well mean? And does equally well mean that the risk and the return of these alternatives, these investment options, they're absolutely identical? What does equally well mean? Is it kind of sort of the same or exactly identically the same? It's not kind of sort of. It's really equal. And, you know, risk and return are obviously two sides of a coin. And I suppose it's hypothetically possible that a fiduciary sort of balancing risk and return could think, you know, you have two different investments, one with a slightly higher risk and slightly higher return, and one with a slightly lower risk and slightly lower return, that sort of considering it all together are equal in how they overall advance the financial interests of the plan. So I don't know that I want to agree with exact risk, exact return. But overall, equally serves the financial interests. And it is absolutely equal. It's not sort of roughly equal. You may have noticed in some of the earlier versions of the guidance, the 1994 interpretive bulletin, I think used the word commensurate, which is a little bit more wiggle room. This is equally serves the financial interests of the plan. I'm still unclear on exactly what equal means. I think equal means truly equal. If you think that one investment or the other over, if you have a 10-year time horizon, you estimate that one or the other is likely to produce a penny greater, then it's not equal. You have to pick the one that's more in the financial interests of the plan. Assuming there's equality between investment options, what else could a ERISA fiduciary consider? Not counting ESG factors, put aside ESG factors, what else might an ERISA plan fiduciary prudently, properly consider in the event of a tie between investment options? So I think the only way you can break a tie where the two options equally serve the financial interests of the plan is by resort to something unrelated to risk or return. Now, not all collateral benefits are quote-unquote ESG factors. As our brief explains, the concept of socially responsible investing goes back far, to John Wesley. I mean, so it's not all quote-unquote ESG. It's just one type of collateral benefit. But I think the choice is basically you choose on the basis of a collateral benefit or you choose by flipping a coin. And what we think this case is about is that neither ERISA nor the common law backdrop to ERISA says you have to make that choice by flipping a coin. It leaves fiduciaries free to employ other collateral considerations, including but not limited to ESG factors, to break that tie. So non-pecuniary factors would be proper? Right. And I think definitionally so, because if you can choose on the basis of pecuniary factors, then there isn't a tie. That's the basic point here. If you can choose on the basis of pecuniary factors, there's no tie. And so we are talking here about a world where you just cannot choose on the basis of risk and return. And therefore, the only choice is to flip a coin or to use something else. And the point is neither ERISA nor the common law requires that you flip a coin. So here's what I get hung up on with that answer, which is wouldn't you have exactly the same result if this rule, instead of being hundreds of pages of federal register text and 314 footnotes, if the register was a single sentence, if this rule just said a single sentence, which is in picking plan investments and voting proxy shares and all the rest of this, ERISA plan administrators shall be bound by a common law duty of trusts and the benefits that they can pursue are exclusively pecuniary under Dudenhofer. Isn't that exactly the same thing? That is because at some point, the fiduciary duties to pick between two things, which are exclusively pecuniary, runs out, at which point there is no breach of the common law duty of trusts. There's no breach of the common law fiduciary duties. And so the rule has just ended. There's no reason to put a finger on the scale or to offer a tiebreaker or whatever, because no one would ever be able to sue that plan administrator for breaching a fiduciary duty under either that proposed one sentence rule or this rule without the tiebreaker. So, I mean, I think crucially, plaintiffs disagree with that. So plaintiffs think, I think, that if that's all the rule said, then you could sue someone for considering a collateral benefit because you think they had to flip a coin. And so the purpose of this rule, like the purpose of all the interpretive bulletins going back 30 years, is to provide some guidance to fiduciaries about what the department thinks they can do in that situation where they have to make a choice and they can't do it on the Well, the people challenging this rule have all kinds of alternative arguments, one of which I'm looking at page 73836 of the rule, is that it's unnecessary. You don't have to provide a tiebreaker one way or the other. That part of the point of this rule is to provide cover for people to make ulterior decisions that are, in fact, not in accordance with the common law duty of fiduciaries. And so what I'm asking is, why would it be necessary to provide the tiebreaker at all? Why couldn't you just say, this is what the fiduciary duties on the plaintiff administrators are, those of the common law of trusts, right? And outside of that, ERISA has nothing to say. And that would be consistent with rule 404, I'm sorry, section 404A, right? Because that just says you have this unflinching duty of loyalty, unflinching duty of prudence, et cetera. I agree that that hypothetical rule would be consistent with the statute. I think the point is, fiduciaries operating in the real world facing a lot of litigation risk and demands on their efforts benefit from guidance from the expert agency as to what their duties are. And so what the department has done here, as it has done for decades, is to try to explicate for fiduciaries how it thinks the statutory duties apply in certain circumstances. And I think we got cut off just a little bit earlier, because I'm not sure I heard your whole answer to this. Help me understand why the tiebreaker is not premised on the idea that at some point, your fiduciary obligations as an ERISA administrator just run out. And therefore, you can make decisions at the back end. That is, at the end, when we look and say these are financially equivalent, now you can make decisions using alternative measures that you could not have used on the front end. That is, before you had satisfied yourself with a prudent investment that these things are financially equivalent. What basis is there in ERISA for that idea? So I think I agree with you in substance that what you have to do is go through the prudent process of determining whether you can make this choice on a financial basis. If you can't, and you have to pick one or the other, then you can consider other things. So I think I agree with sort of the thrust of your point. I was disputing a little bit semantically the idea that you described that as fiduciary duties running out. Because we think that even in that circumstance, you are still bound by the fiduciary duties. You are still acting in accordance with the fiduciary duties. But there's nothing in this that says a fiduciary doesn't have to be fiduciary in the tiebreaker. Right. It is just— I want to be clear on that. No, no, no. Absolutely. It is just that when you are in this limited set of circumstances where you've got to pick one, you can't do it on the basis of risk return, then the compliance with your fiduciary duties leaves you free to consider a collateral benefit. But I'm still not sure I'm understanding what you're saying. Because you can't—when you're flipping the coin, whether you're doing it at the beginning or the end of your financial planning decision, it's never consistent, is it, with the notions of being a fiduciary? If you did it at the beginning, it certainly wouldn't be consistent. Right. But at some point, you think you can. So at the end, my point is that whichever of the options you pick, you are serving the financial interests of the plan. That's why you're complying with your fiduciary duties. Deciding between by flipping a coin at that point doesn't mean you aren't complying with your fiduciary duties because you have already determined through the whole process that you're going to be best serving the financial interests of the plan. That's my only point. So again, as I said at the outset, I think this is really a fairly narrow dispute. The Department isn't putting a thumb on the scale in favor of considering ESG— That's what I was going to ask, this notion of a true tie versus a penny in between. How often does that truly come up? So I think it is probably pretty rare. I am not a fiduciary. I am not an expert in how fiduciaries work. I don't have reason to dispute the other side's view that in most cases, fiduciaries are going to be able to make choices on the basis of risk and return. That's certainly true in the case of the sorts of investments we're all probably most familiar with, publicly traded securities and the like. I think as our brief notes and as the rule notes, this sort of thing is most likely to come up in the context of illiquid investment. Things like you're investing in two construction projects, each of which is going to sort of materialize in 10 years, and you just don't—you can't really look at the two of them and say one or the other is likely to have a higher risk or higher return or a lower risk over that time horizon. So you might at that point say, I'm going to pick the one that has the best environmental compliance. Yeah, well, that's what I was going to ask, too, because it doesn't seem like you can know for sure how investments are going to come out. Back in my day, a typewriter was a huge investment. Now, not so much. Pre-pandemic, there were a bunch of things that were fantastic that are now gone, and things that weren't working all that well that benefited from the pandemic. So how is a fiduciary to find a tie, given all of the world that changes, frankly, not that little? Fiduciaries have a hard job, and that's why they have a certain scope of discretion. They have to act prudently. They have to go through the process of considering the relevant factors, and then they make the best choice they can. But the fact that fiduciaries have a hard job and have to know how they're supposed to exercise their discretion is one reason DOL promulgates rules like this, to provide them with some guidance about DOL's view of what the statutory duties require in various scenarios. I certainly agree that you can't have a crystal ball at the outset. You have to make your best judgment about what is going to be in the best financial interest of the plan, and this rule applies. This tiebreaker applies only where that leaves you. And how far down the road is the fiduciary supposed to be looking at the potential of the investment? It depends on the time horizon of the plan. So if the plan's assets are being invested, you know, for the long term, then you look at the long term, if they're being invested. I'm just in the same way that you would as an individual investor decide, what's the time horizon of my investment? And the tiebreaker here is predicated on that. You have to look at what serves the financial interest of the plan over the appropriate time horizon. Okay, the Chevron point, the Loper-Bright point. So Chevron, I don't think you would disagree. Certainly played a significant role, not dispositive maybe, but a significant role in the district court's analysis. We've got precedent galore that sends cases back for reconsideration when the district court relied on an overruled case. Why wouldn't we do so here? What are the drawbacks? I don't have a huge problem with that. I mean, what I would say about the district court's opinion, I agree it sort of says I'm operating under the Chevron framework. I think the logic of the district court's opinion would produce the same result under Loper-Bright. I mean, basically what the district court said is, does ERISA speak to what a fiduciary is supposed to do where there is a tie? I don't think it speaks to that, just as the department has said for 30 years. And so if that's right, if ERISA doesn't speak to that, then the tiebreaker rule in this rule is valid. Because the point is, this is DOL interpreting ERISA as not speaking to how fiduciaries are supposed to act in that scenario of a tie. So I think the implication of the district court's reasoning is that you affirm under Loper-Bright. But if the court thinks it would be better to let the district court address that in the first instance, I don't have a huge problem with giving the district court the chance to do that. Counsel, what are we supposed to do with the disconnect between the position from the Department of Labor, which is, this is never going to happen, the odds, this is like, this is not like flipping a coin. This is like flipping a coin and having it land on its edge, that we're going to have two financial, it's crazy to think that we're ever going to have two financial investments and you have to choose one. And golly, the odds of this ever happening are one in a trillion, seems to be the Department of Labor's position. But then we read the amicus briefs and we look at the reality of this case. And there are just hundreds and hundreds of citations throughout about why this is such a huge deal, why Black Rock State Street, the big three, are pushing this, President seems to be in a massive disconnect between the department's view that it's a nothing burger and the litigation posture of the case presented to us, which is like, this is a monumental deal about whether we can have ESG funds in ERISA. So I think the amicus briefs on that point are largely about a view of the law that plaintiffs have rightly disavowed. So the department, the central point of this rule is to say, fiduciaries are worried that under the 2020 rule, they can't even consider ESG factors insofar as they bear on risk and return, right? They have, based on statements in the preamble and the word pecuniary, that there is confusion. They are worried they can't consider ESG factors insofar as they bear on risk and return. And actually, if you read some of the amicus briefs on plaintiff's side, they think you can't consider ESG factors as they bear on risk and return. They say, you know, how could you know if the climate's going to change or how that bears on risk and return? So that is a big deal because fiduciaries do that every day. They have to be able to do that. I think the tiebreaker rule, which is what plaintiffs are disputing here, largely isn't a big deal. It's what they have rightly disavowed that is a big deal. And I think they are correct to say, as the 2020 rule said, of course you can consider ESG factors like all other factors that bear on risk and return. Okay. Your time is up. Thank you. Thank you, Your Honors. Now we'll hear the rebuttal. So to pick up exactly where we left off, President Biden's executive order on day one of his administration was not about resolving ties in the one in a trillion case where the coin lands on the edge. This was spurred by an executive order on climate change, not on resolving ties in these weird, isolated cases. And it arises, the whole issue arises out of the potential for confusion between when socially popular issues and causes are also financially material and when they're not. It is sometimes the case that you do well by doing good. It is sometimes the case that a particular climate change-oriented strategy for a business makes it a good investment target. And sometimes that's greenwashing. Sometimes that's something that money managers- How is the fiduciary supposed to know that? So the fiduciary- Whether climate change matters. So the fiduciary is supposed to do that by a thorough analysis under exercising its duty, living out its duty of prudence, essentially. That sometimes, you know, all kinds of investment targets make all kinds of claims about their products, their market position, whatever, and it is the solemn job of the fiduciary to separate the wheat from the chaff. Sometimes there is wheat. Sometimes these factors are financially material, and that's exactly what the 2020 rule recognizes and permits, as it has to under the text of ERISA. The problem is the department found in that rule that sometimes fiduciaries are tempted to indulge their political preferences or other collateral preferences under the cover of financial materiality. And so the 20 rule was articulated in a way to be laser-focused on what fiduciaries' considerations of these ESG-type factors actually was permitted under the statute and then was also very careful to lay out a variety of documentation obligations consistent with the very first portion of ERISA that talks about safeguards and documentation so that fiduciaries who stray, who substitute their personal judgment or their personal policy views, are more easily caught. It's not going to get them all, but it will get more of them. That was an important factor of the issue. If you're back and forth on things being the same but some of them affecting pecuniary and some of them not, doesn't that make it harder to know what the fiduciary is doing and whether they're doing it right? That's exactly right, which is exactly why the 2020 rule required greater documentation. But what I'm saying is everybody agrees that if you decided something based on pecuniary, that's totally acceptable under ERISA. I mean, y'all can all agree on that. Yes. Well, but if you're saying that sometimes ESG is pecuniary and therefore is totally under ERISA regardless of 2020, 2022, or anything else, but sometimes it's not, it seems like we're walking down just another path of problems. Instead of, you know, the fiduciaries, a true fiduciary wants to do what's right, but knowing what's right sounds like we're making it harder, everything y'all are saying. So that's what concerns me. I want to make sure whatever it is, that it's not making a fiduciary have to throw up their hands. Absolutely. I think one feature of the 20 rule I would point out on documentation is that the 20 rule in requiring documentation of a tiebreaker requires the fiduciary to show how the chosen non-pecuniary factor is consistent with the interests of participants. That is, that's a formulation of tiebreaker that is more aligned with the duty of loyalty to the exclusive benefit than what we have now. DOL took that away and said there is no longer a, as my friend on the other side pointed out, fiduciaries are no longer restricted or guided in terms of the non-pecuniary factors they can choose once they've hit the tiebreaker. Okay. Thank you. This case is now under consideration. Thank you, Your Honors.